

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-17-00831-CV

**IN THE INTEREST OF M.M.M.** and L.M.M., Children

From the 45th Judicial District Court, Bexar County, Texas
Trial Court No. 2016PA01206
Honorable John D. Gabriel Jr., Judge Presiding[1]

Opinion by:     Marialyn Barnard, Justice

Sitting:        Marialyn Barnard, Justice
                Patricia O. Alvarez, Justice
                Luz Elena D. Chapa, Justice

Delivered and Filed:  May 30, 2018

AFFIRMED

This is an appeal from a trial court's order terminating appellant father's ("Father") parental rights to his children, M.M.M. and L.M.M.[2]  On appeal, Father contends the evidence is legally and factually insufficient to support the trial court's finding that termination was in the best interest of the children.  We affirm the order of termination.

### BACKGROUND

The Texas Department of Family and Protective Services ("the Department") became involved with the family when it received a report that Mother, who has four children in addition

---

[1] The Honorable Stephani Walsh is the presiding judge of the 45th Civil District Court, Bexar County, Texas. However, the termination order in this matter was signed by the Honorable John D. Gabriel Jr., retired, who was sitting by assignment.

[2] The trial court also terminated the parental rights of the children's mother ("Mother"), but she did not file a notice of appeal challenging the trial court's order.  Accordingly, she is not a party to this appeal.

to M.M.M. and L.M.M., struck one of the children with a hanger. The Department opened a "Family-Based Case." Although that report could not be confirmed, during family-based services, there was a domestic violence incident that resulted in Mother's arrest. All of the children were initially placed with a grandmother. However, when she was unable to care for them, the Department removed the children, placing them in various foster-care situations. When M.M.M. and L.M.M. were removed, they were not placed with Father "due to issues involving the domestic violence and his drug use and instability." Rather, they were placed with a paternal aunt, i.e., Father's sister.

The Department created a service plan for Father requiring him to: (1) participate in individual counseling to address issues of "abuse and neglect and maladaptive behaviors"; (2) complete a drug assessment and follow through with recommendation for drug treatment, including inpatient treatment if necessary; (3) complete a psycho-social evaluation and follow through with any recommendations; (4) complete the VENT program to address issues relating to domestic violence, anger management, and parenting; and (5) demonstrate he has the ability to provide a safe, drug-free, nurturing environment for his children, and is able to provide for their physical, medical, and educational needs.

At the hearing, the trial court heard testimony from: (1) Lora Simmons, the Department caseworker throughout the course of the case; and (2) Father. Ms. Simmons testified that with regard to his service plan, Father completed the VENT program. And although he engaged in counseling, he never completed counseling services. Moreover, drug use was the Department's main concern with Father — specifically marijuana use. In that regard, Father completed the drug assessment, which resulted in a referral for drug treatment. However, Father never participated in drug treatment in accordance with the referral.

Ms. Simmons also testified that other than providing diapers on occasion, Father did not provide regular support for the children. Moreover, he has not demonstrated stability with regard to his living situation — never providing evidence of a place of his own, residing with family, friends, or in hotels.

As for visitation, Ms. Simmons described Father's visits as irregular, testifying his own sister stated his visits were infrequent. Ms. Simmons opined that Father's parental rights should be terminated because he has failed to place his children's needs above his own, and the current placement — with a paternal aunt — is likely to result in adoption.

The trial court also heard testimony from Father. Father admitted to marijuana use, but claimed that he has been clean for the last month. He also admitted he failed to complete counseling and drug treatment, but claimed it was because of his work schedule. He contradicted Ms. Simmons's testimony about support, testifying he provides support for his children "all the time" by placing money on his sister's credit card. However, he could not provide the court with a dollar amount with regard to support. Contradicting Ms. Simmons's testimony again, Father stated he sees the children "pretty much every weekend," even though he lives in Houston.

At the conclusion of the hearing, the trial court terminated Father's rights, finding he: (1) failed to support his children in accordance with his ability; and (2) failed to comply with the provisions of a court-ordered service plan that specifically established the actions necessary for him to obtain the return of his children. *See* TEX. FAM. CODE ANN. § 161.001(b)(1) (F), (O) (West Supp. 2017). The trial court further found termination of Father's parental rights would be in his children's best interests. *See id*. § 161.001(b)(2). Accordingly, the trial court rendered an order terminating Father's parental rights. Thereafter, he perfected this appeal.

**ANALYSIS**

On appeal, Father does not challenge the evidence regarding the trial court's findings under section 161.001(b)(1) of the Texas Family Code ("the Code"). *See id.* § 161.001(b)(1)(F), (O). Rather, he argues the evidence is legally and factually insufficient to support the trial court's finding that termination was in the children's best interests. *See id.* § 161.001(b)(2). We disagree.

*Standard of Review*

A trial court may terminate a parent's right to a child only if it finds by clear and convincing evidence that the parent committed an act prohibited by section 161.001(b)(1) of the Code and termination is in the best interest of the child. *Id.* § 161.001(b). "Clear and convincing evidence" is "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007. When reviewing the legal and factual sufficiency of the evidence, we apply the well-established standards of review. *See* TEX. FAM. CODE ANN. §§ 101.007, 161.206(a); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (legal sufficiency); *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (factual sufficiency). In sum, an appellate court must determine whether the evidence is such that the trier of fact could reasonably form a firm belief or conviction that termination was in the child's best interest. *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002).

In conducting a sufficiency review, we may not weigh a witness's credibility because it depends on appearance and demeanor, and these are within the domain of the trier of fact. *J.P.B.*, 180 S.W.3d at 573. Even when such issues are found in the appellate record, we must defer to the fact finder's reasonable resolutions. *Id.*

*Best Interests — Applicable Law*

In a best interest analysis, we apply the non-exhaustive *Holley* factors. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). In analyzing the evidence within the *Holley*

framework, we note that evidence of each *Holley* factor is not required before a court may find that termination is in a child's best interest. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2012). In other words, the absence of evidence as to some of the *Holley* factors does not preclude a fact finder from reasonably forming a strong conviction or belief that termination is in a child's best interest. *Id.* Moreover, in conducting our review of a trial court's best interest determination, we focus on whether termination is in the best interest of the child — not the best interest of the parent. *In re D.M.*, 452 S.W.3d 462, 468–69 (Tex. App.—San Antonio 2014, no pet.).

In addition to the *Holley* factors, we recognize there is a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). However, promptly and permanently placing a child in a safe environment is also presumed to be in the child's best interest. TEX. FAM. CODE ANN. § 263.307(a). Thus, to determine whether a child's parent is willing and able to provide the child with a safe environment, we also consider the factors set forth in section 263.307(b) of the Code. *Id.*

Additionally, evidence that proves one or more statutory grounds for termination may be probative to prove termination is in the child's best interest. *C.H.*, 89 S.W.3d at 28 (holding same evidence may be probative of both section 161.001(1) grounds and best interest, but such evidence does not relieve State of burden to prove best interest). In conducting a best interest analysis, a court may consider in addition to direct evidence, circumstantial evidence, subjective factors, and the totality of the evidence. *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). Finally, a trier of fact may measure a parent's future conduct by his past conduct in determining whether termination of parental rights is in the child's best interest. *Id.*

### *Application*

As indicated above, the trial court heard testimony from two witnesses at the final hearing — Ms. Simmons, the Department caseworker, and Father.

Ms. Simmons testified the children — girls — were approximately three and one at the time of the final hearing. Thus, they are too young to express their desires with regard to conservatorship. *See* TEX. FAM. CODE ANN. § 263.307(b)(1) (child's age and physical and mental vulnerabilities); *Holley*, 544 S.W.2d at 371–72. However, when a child is unable to express her desires, a fact finder may consider that she has bonded with her foster family, is well cared for by them, and has spent minimal time with the parent. *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (citing *In re J.M.*, 156 S.W.3d 696, 706 (Tex. App.—Dallas 2005, no pet.); *In re U.P.*, 105 S.W.3d 222, 230 (Tex. App.—Houston [14th Dist.] 2003, pet. denied)). Here, although Father testified he has spent nearly every weekend with his daughters, Ms. Simmons testified his visits with the girls, which are supervised by the paternal aunt, do not occur "with any regularity, just whenever he has a chance." She stated, without objection, that Father's sister described his visits as infrequent. Ms. Simmons admitted, however, that he visits enough to have established a bond with the girls. Ms. Simmons pointed out that initially, there were questions about Father's paternity with regard to the girls, noting that until the Department became involved, Father never took any steps to establish his paternity.

Ms. Simmons testified the current placement meets the children's physical and emotional needs. She stated the placement is stable and the paternal aunt desires to adopt the girls. Ms. Simmons advised that the Department would approve of the adoption in the event Father's rights are terminated. *See Holley*, 544 S.W.2d at 371–72.

As noted above, Ms. Simmons also testified that according to the paternal aunt, other than "bring[ing] diapers or something once in a while," Father has not provided support for the children. Ms. Simmons stated he has provided "[n]o regular support at all." *See* TEX. FAM. CODE ANN. § 263.307(b)(12) (whether child's family demonstrates adequate parenting skills); *Doyle v. Tex. Dep't of Protective & Regulatory Servs.*, 16 S.W.3d 390, 398 (Tex. App.—El Paso 2000, pet.

denied) (holding that parent's failure to provide stable home and provide for child's needs contributes to finding that termination of parental rights is in child's best interest). *Holley*, 544 S.W.2d at 371–72. In addition, Father has failed to establish that he can provide a stable home for the children. *See Doyle*, 16 S.W.3d at 398; *In re M.R.*, 243 S.W.3d 807, 821 (Tex. App.—Fort Worth 2007, no pet.) (holding that parent's inability to provide stable home supports finding that termination is in child's best interest). According to Ms. Simmons, Father has failed to show "he can stay in one place, have a home." *See Doyle*, 16 S.W.3d at 398; *M.R.*, 243 S.W.3d at 821. She stated that every time she speaks with Father, he is living "someplace else," and he has "never allowed anyone to see where he is living … he is always living with friends." Most recently, Father claimed he was living with his brother, but told another case worker he was living in a hotel. *See Doyle*, 16 S.W.3d at 398; *M.R.*, 243 S.W.3d at 821.

With regard to the emotional and physical danger to the children — now and in the future — there is evidence Father engaged in domestic violence and substance abuse. *See* TEX. FAM. CODE ANN. § 263.307(b)(7) (history of abusive or assaultive conduct by child's family); *id.* § 263.307(b)(8) (history of substance abuse by child's family); *id.* § 263.307(b)(11) (willingness and ability of child's family to effect positive environmental and personal changes); *Holley*, 544 S.W.2d at 371–72. And, although Father completed classes relating to domestic violence and anger management, he admittedly failed to deal with his drug issues. *See* TEX. FAM. CODE ANN. § 263.307(b)(8); *id.* § 263.307(b)(11); *Holley*, 544 S.W.2d at 371–72.

Father's issues relating to drug use were undisputed. *See* TEX. FAM. CODE ANN. § 263.307(b)(8); *Holley*, 544 S.W.2d at 371–72; *In re L.R.G.*, 498 S.W.3d 195, 204 (Tex. App.— Houston [14th Dist.] 2016, pet. denied) (holding that parent's drug use supports finding that termination is in child's best interest). Father claimed he had given up his use of marijuana, but admitted using during the course of the case, testifying that he had used marijuana as recently as a

month before the final hearing. *See* TEX. FAM. CODE ANN. § 263.307(b)(8); *Holley*, 544 S.W.2d at 371–72; *L.R.G.*, 498 S.W.3d at 204. The evidence showed that of the six or seven drug tests he submitted to during the course of the case, Father tested negative for drugs only once. *See* TEX. FAM. CODE ANN. § 263.307(b)(8); *Holley*, 544 S.W.2d at 371–72; *L.R.G.*, 498 S.W.3d at 204.

Given his admitted, continual drug use, Ms. Simmons testified the most important part of Father's service plan was drug treatment. However, Father admitted he never completed treatment, testifying that he was unable to complete treatment due to his work schedule. *See* TEX. FAM. CODE ANN. § 263.307(b)(8); *id.* § 263.307(b)(10) (willingness and ability of child's family to seek out, accept, and complete counseling services); *id.* § 263.307(b)(11); *Holley*, 544 S.W.2d at 371–72; *L.R.G.*, 498 S.W.3d at 204. This demonstrates a failure by Father to place his needs and desires above those of his daughters.

The foregoing evidence is also relevant to Father's parenting abilities. *See* TEX. FAM. CODE ANN. § 263.307(b)(10); *id.* § 263.307(b)(11); *id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72. Father has a history of drug use — admitting to using marijuana throughout the case and up until just a month before the final hearing — and has been involved in domestic violence. Yet he failed to complete the most important part of his service plan — drug treatment. *See* TEX. FAM. CODE ANN. § 263.307(b)(8); *id.* § 263.307(b)(10); *id.* § 263.307(b)(11); *id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72. Moreover, Father has failed to demonstrate his ability to provide a stable home for his daughters. *See Doyle*, 16 S.W.3d at 398; *M.R.*, 243 S.W.3d at 821. On this basis, the trial court could have determined Father lacks the abilities needed to parent his young children. *See Holley*, 544 S.W.2d at 371–72.

## CONCLUSION

After considering all the evidence in the light most favorable to the trial court's best interest finding, we conclude the trial court reasonably could have formed a firm belief or conviction that

termination of Father's parental rights was in his children's best interests. *See J.P.B.*, 180 S.W.3d at 573; *H.R.M.*, 209 S.W.3d at 108. Thus, we hold the evidence is sufficient to support the trial court's finding that termination of Father's parental rights was in his daughters' best interests and affirm the trial court's termination order.

Marialyn Barnard, Justice